Argued and submitted November 8, 2004, decision of the Court of Appeals reversed, judgment of circuit court affirmed November 18, 2005

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROCKY DEVON SMITH,
*Petitioner on Review.*

(C991426CR; CA A110289; SC S51233)

123 P3d 261

Eric M. Cumfer, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

BALMER, J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This criminal case requires us to examine the scope of a trial court's obligation when a defendant requests that the court appoint new counsel because the defendant is dissatisfied with his existing appointed counsel. Here, defendant told the court on the day of trial that he was dissatisfied with his appointed counsel and counsel's preparation of defendant's case. The trial court listened to defendant's complaints, but it did not inquire into the basis of the complaints or hold a hearing regarding defendant's assertions. The court, however, expressed its confidence that defendant's appointed counsel was competent and was prepared for trial. The case proceeded to trial, and defendant was convicted.

On appeal, the Court of Appeals concluded that the trial court had erred in not inquiring into defendant's complaints, reversed defendant's convictions, and remanded for a new trial. *State v. Smith*, 187 Or App 562, 69 P3d 787 (2003) (*Smith I*). On reconsideration, however, the Court of Appeals withdrew its disposition of the case, vacated defendant's convictions, and remanded for a new hearing on defendant's pretrial complaints regarding his counsel and a determination of whether the trial court's error was harmless. *State v. Smith*, 190 Or App 576, 90 P3d 145 (2003) (*Smith II*). Defendant petitioned for review, arguing that the Court of Appeals' initial disposition was correct and that he was entitled to a new trial. We allowed the petition. Because we conclude that the trial court did not err, we reverse the decision of the Court of Appeals.

## I. PROCEEDINGS BELOW

The state charged defendant with robbery, assault, and related firearms offenses. On the day of trial, defendant requested that the trial court appoint substitute counsel because, defendant asserted, he lacked confidence in his counsel and his counsel had failed to investigate his case adequately. The comments of defense counsel and defendant, and the trial court's response, are set out in the transcript:

"[DEFENSE COUNSEL]: * * * Mr. Smith is present and, as I indicated to the court in chambers this morning,

Mr. Smith has indicated to me that he is concerned about my representation of him and he has asked me to indicate to the court that he would like new counsel assigned to the case.

"One, apparently, it's his belief I'm not prepared and ready to go in this case. And, number two, he, apparently, had some problems with the way I've been handling it with him over the past few days.

"With that said, I guess I would let my client indicate to the court what his concerns are and have the court address that with him.

"THE COURT:   Mr. Smith, this is your opportunity to address the court.

"THE DEFENDANT:   For several months, I've been working with [former counsel], I don't know if he was just on retainer with [defense counsel], but I was not too confident, either, with his ability, but I trusted the fact that he was looking out for my best interests rather than the quickest way to end the case.

"I mean no personal disrespect against [defense counsel], but I just don't feel that I will be getting a fair representation with someone that would rather just see the case done and over with rather than hear the truth or have the truth even be brought out.

"I have witnesses and other facts and none of them have even been questioned. Or, I just don't—none of my witnesses have been talked to except for one, and she was asked a few questions of does she know what happened? Does she know what came in? And this was told to me by my previous lawyer * * * and that was it. None of the other ones that I have given to the law firm have been spoken to. I don't feel that I'm being fairly represented by staying with [defense counsel].

"THE COURT:   Well, let me comment on a couple things. First of all, I've been doing this job now, this is my 18th year, so I've been a judge for a while and I've seen a lot of attorneys come through the court system. I can tell you that were I charged with a crime, there are probably about 10 attorneys that I would personally consider representing me, out of the 10,000 that are practicing law here in the State of Oregon. [Defense counsel] is on that list. He's a very good attorney. He's probably a better attorney than

[former counsel] is, and if [defense counsel] tells me that he's ready to go to trial in this matter and represent your interests, I have to believe him.

"Now, this is a serious matter, extremely serious matter for you and the court is entirely aware of that. We believe that if there was any kind of prejudice, substantial prejudice to you in proceeding ahead at this point in time with [defense counsel] representing you, I wouldn't hesitate over the State's objection to continue the matter.

"On the other hand, I'm not going to continue it because at some point in time, we have to resolve this matter and we have lots of other cases and lots of other people that are trying to get their day in court.

"Based upon what I've heard at this particular point in time, I'm not prepared to continue the trial. So we will be proceeding today."

The trial court denied defendant's request.

Defense counsel then noted for the record that the prosecutor had just given him a summary of the testimony of a codefendant who had entered into a plea agreement. Defense counsel, however, told the trial court that he was "not indicating to the court that that affec[ted] [his] ability to be prepared for trial," that he had anticipated what the witnesses on the witness list had to say, and that he had copies of their prior statements. The trial court then recessed the proceedings for 15 minutes to allow defendant and his counsel to discuss whether to enter a plea or to go to trial. Defendant chose to proceed to trial, and a jury convicted him of the charged offenses.

Defendant appealed, arguing that the trial court had erred (1) by failing to inquire into defendant's claims regarding the adequacy of his counsel; and (2) by failing to appoint substitute counsel. Defendant argued that, because of those errors, the Court of Appeals should reverse his conviction and grant him a new trial.

The state responded that the trial court had listened to and evaluated defendant's complaints but that it ultimately had rejected them because defendant had offered no legitimate basis for removing his court-appointed counsel.

The state further argued that, if the trial court in fact had erred in not making the required inquiry, the appropriate disposition was for the Court of Appeals to remand the case to the trial court to determine whether defendant's complaints were legitimate and whether the trial court should have appointed substitute counsel to represent him. Responding to defendant's second assignment of error, the state argued that the trial court had not abused its discretion in denying defendant's motion for substitute counsel.

A panel of the Court of Appeals held that the trial court had erred by failing to inquire into defendant's complaints concerning his appointed counsel. *Smith I*, 187 Or App at 564. Based on that perceived error, the court reversed the trial court's judgment and remanded the case for a new trial. *Id.*

The state petitioned for reconsideration, again arguing that, even if the trial court had erred, the proper remedy was not a new trial but, rather, a remand to the trial court so that it could conduct the required inquiry, decide whether it should have appointed substitute counsel and, if it answered that question affirmatively, order a new trial. Specifically, the state contended that, under Article VII (Amended), section 3, of the Oregon Constitution, the Court of Appeals lacked authority to reverse the trial court judgment because, even if defendant had demonstrated legal error in the trial court's failure to inquire into defendant's complaints, he had not established that he had been prejudiced by that error.

In an en banc decision, the Court of Appeals granted reconsideration, withdrew its earlier disposition, and remanded to the trial court to conduct a hearing on defendant's complaints about his counsel and to determine whether defendant's counsel had been adequate. The court first stated that, as the state had contended, Article VII (Amended), section 3, of the Oregon Constitution[1] requires the court to affirm the trial court judgment, despite any error

---

[1] Article VII (Amended), section 3, provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial * * *."

at trial, if the judgment "was such as should have been rendered in the case." *Smith II*, 190 Or App at 578-79 (quoting *State v. Davis*, 336 Or 19, 25, 77 P3d 1111 (2003) (quoting Article VII (Amended), section 3)). The court then explained that, because "the trial court had an affirmative duty to inquire" into defendant's request for a new attorney but had failed to make that inquiry, the Court of Appeals did not have an adequate record on which to affirm the trial court's judgment. 190 Or App at 580. It therefore remanded the case to the trial court to conduct the inquiry that it had not conducted at trial. As noted, we allowed defendant's petition for review.

## II. ANALYSIS

■    The parties focus their arguments in this court on whether the proper disposition on remand is a new trial or a hearing to determine whether defendant's complaints about his counsel were legitimate and should have resulted in the appointment of new counsel. That disposition, however, becomes an issue only if the Court of Appeals was correct in holding that the trial court erred by not inquiring into those complaints. As noted, the state argued in the Court of Appeals that the trial court did not err in that respect. In this court, the state did not advance that argument, but no one disagrees that the parties' other arguments are premised on the assumption that the trial court erred. We, therefore, choose to begin our inquiry with the threshold question whether the trial court erred by not inquiring into defendant's complaints about his appointed counsel.[2] We also end with that inquiry, because, for the reasons that we discuss below, we conclude that the trial court did not err.

On appeal, as previously noted, defendant argued that the trial court had erred, first, in failing to inquire into defendant's complaint about his appointed counsel and, second, in denying defendant's request for new counsel. The Court of Appeals agreed with defendant on the first issue. *See*

---

[2] *See* ORAP 9.20(2) (when Supreme Court allows petition for review, it may consider the issues that were before the Court of Appeals); *Dunlap v. Dickson*, 307 Or 175, 180 n 4, 765 P2d 203 (1988) (illustrating proposition; deciding case on basis of argument raised in Court of Appeals, but not Supreme Court).

*Smith I*, 187 Or App at 564 ("The trial court did not inquire into [defendant's] complaints. * * * That was error."); *Smith II*, 190 Or App at 578 ("On reconsideration, we adhere to our holding that the trial court's inquiry was inadequate under the applicable case law."). The Court of Appeals based its decision on two earlier Court of Appeals cases. *See Smith I*, 187 Or App at 564 (citing *State v. Coffey*, 158 Or App 112, 972 P2d 1219 (1999) and *State v. Grcich*, 148 Or App 337, 939 P2d 649 (1997)). Those decisions, in turn, were based on this court's decision in *State v. Langley*, 314 Or 247, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993), and on earlier Court of Appeals precedent. *See, e.g., Grcich*, 148 Or App at 342-43 (citing earlier Court of Appeals cases and *Langley*). We now consider whether *Langley* or any of this court's other cases requires the inquiry that the Court of Appeals held was necessary here.

## A.   *This Court's Decision in Langley*

In *Langley*, the defendant sought reversal of his conviction on multiple counts of aggravated murder, arguing, among other things, that the trial court had erred in denying his motion for appointment of new counsel. On the first day of trial, the defendant, who had been represented for nearly a year by two court-appointed lawyers, moved for the appointment of new counsel, asserting that he no longer could work with his lawyers. The trial court "appointed a third independent lawyer to advise defendant about the ramifications of a *pro se* defense and to assess defendant's complaints about his lawyers." 314 Or at 257. After considering advice from the third lawyer, the defendant chose to continue to be represented by his appointed counsel, but nevertheless moved for appointment of new counsel. He argued that, in an unrelated proceeding, the same appointed counsel had not allowed him to put on all his evidence, had lied to him and manipulated him, had not discussed strategy with him, and had not prepared the defendant to testify. The trial court denied the motion for substitute counsel, stating that nothing had been presented to the court to indicate that appointed counsel's actions were not reasonable under the circumstances and that appointment of substitute counsel would involve unnecessary delay and waste of money. 314 Or at 257 n 8.

This court affirmed the trial court order denying the defendant's motion for substitution of counsel. The court first noted that ORS 135.050(5) authorizes a court to substitute one appointed counsel for another " 'when the interests of justice require such substitution,' " but that a defendant has " 'no right to have another court-appointed lawyer in the absence of a legitimate complaint concerning the one already appointed for him.' " 314 Or at 257 (quoting *State v. Davidson*, 252 Or 617, 620, 451 P2d 481 (1969)). The court then observed:

> "Under *Davidson*, assessment of a defendant's request for substitution of counsel requires a factual assessment of whether the complaint is 'legitimate.' The trial court made such an assessment and found that defendant's complaints did not require substitution of counsel."

314 Or at 257. The court went on to hold that a trial court's denial of a motion for substitution should be reviewed for abuse of discretion. *Id.* at 258. Finally, the court examined the defendant's complaint under that standard, stating that a "legitimate complaint" about court-appointed counsel was one that was based on an abridgement of the defendant's constitutional right to adequate assistance of counsel. *Id.* Because the record demonstrated that defendant's objections were based on dissatisfaction with counsel's choices of strategy, rather than the adequacy of the representation, the trial court was not required to appoint new counsel and did not abuse its discretion in denying the defendant's motion. *Id.* at 258-59.

This court's ruling in *Langley* thus touched on several distinct issues related to the right to counsel. The court recognized that a defendant in a criminal case has a right to the adequate assistance of counsel, *id.* at 258 and n 9, that Oregon law authorizes courts to substitute one appointed lawyer for another, *id.* at 257, that a defendant has no right to new appointed counsel in the absence of a legitimate complaint about existing counsel, *id.*, and that a trial court ruling on a motion to substitute counsel will be reviewed for abuse of the trial court's discretion. *Id.* at 258. Those aspects of *Langley* are not at issue here. Rather, this case presents only the narrow issue of the meaning of the passage in *Langley*,

quoted previously, that a defendant's request for substitute counsel "requires a factual assessment of whether the complaint is 'legitimate,' " *id.* at 257, and this court's acceptance in *Langley* of the trial court inquiry in that case. We now consider the basis and implications of that aspect of *Langley* in greater detail.

To support its statement that the trial court must make a "factual assessment" as to whether a defendant's complaint is "legitimate," *Langley* cited this court's decision in *Davidson*. *Davidson*, however, simply affirmed a trial court order denying the defendant's motion to substitute appointed counsel on the grounds that the defendant had failed to offer an "adequate" or "legitimate" reason for requesting a new lawyer. This court's review of the trial court proceedings in *Davidson* was short and to the point:

> "Defendant became dissatisfied with his appointed attorney's services and asked that he be removed. No adequate reasons were given to the court for defendant's dissatisfaction and the court denied the motion. [After being granted the opportunity to substitute a retained lawyer, but failing to retain one,] [d]efendant was forced to trial with his court-appointed lawyer, after being given four continuances. Defendant conducted a large part of the trial himself while his lawyer sat by his side. To recite the facts is to refute defendant's claim of error. * * * [Defendant] had no right to have another court-appointed lawyer in the absence of a legitimate complaint concerning the one already appointed for him."

252 Or at 619-20. *Davidson* thus did not use the phrase "factual assessment" or impose an affirmative obligation on the trial court to inquire into the reasons that a defendant has requested substitute counsel. Rather, it placed the obligation of coming forward with "adequate reasons" for the substitution of counsel or a "legitimate complaint" about existing counsel squarely on the defendant.

In *Langley*, this court was not required to decide whether a trial court, confronted with a request for substitute counsel, was affirmatively required to inquire into and assess the basis for the defendant's complaints about his counsel. The only issue in *Langley*, as in *Davidson*, was whether the

trial court had erred in denying defendant's motion to substitute counsel. While the trial court in *Langley* did inquire into the defendant's complaints, appointing an independent lawyer to assess them, nothing in *Langley* or in this court's earlier cases *required* that it do so. This court's acceptance of that trial court procedure in *Langley* as adequate to refute the defendant's claim that the trial court erred in denying his motion for new counsel did not establish that an independent inquiry is a legal requirement in every case when a defendant requests substitute counsel.

We acknowledge that the statement in *Langley* that "assessment of a defendant's request for substitution of counsel requires a factual assessment of whether the complaint is 'legitimate,' " 314 Or at 257, might be read to mandate that the trial court do something more than allow a defendant to explain the reasons for the defendant's motion for substitute counsel and then to rule on that motion. Such a reading, however, would be erroneous. That statement in *Langley*, read in context, simply echoes the holding in *Davidson* that a motion to substitute counsel should be granted if the defendant's complaint is legitimate and denied if it is not.[3] It recognizes that determining the legitimacy of any complaint about appointed counsel is case—and fact—specific, and it leaves to the trial court the task of weighing whatever the defendant puts before that court in light of all the other known circumstances, such as the judge's personal observations of the performance of counsel at trial.

Our previous cases thus hold that a trial court has an obligation to consider and grant or deny a motion for substitute counsel and to exercise its discretion in doing so. However, those cases do not establish a rule of law that a trial court has an affirmative duty to conduct an inquiry and make a factual assessment in response to a defendant's complaints about appointed counsel.

---

[3] This court quoted the statement from *Langley* in *State v. Thompson*, 328 Or 248, 254-55, 971 P2d 879, *cert den*, 527 US 1042 (1999), in the course of considering whether the trial court had abused its discretion in denying the defendant's motion for substitution of counsel. *Thompson*, however, did not address the issue presented here, because the defendant did "not claim that the trial court failed to make a factual assessment of the legitimacy of his complaints against his counsel." *Id.* at 255.

B.  *The Scope of the Right to Counsel*

That conclusion does not end our analysis, however. If the constitutional right to the assistance of counsel requires a trial court to conduct an inquiry into, and to make a factual assessment of, a defendant's complaints about appointed counsel, we will affirm the Court of Appeals' holding to that effect. We now turn to that issue.

■ State and federal constitutional provisions guarantee a defendant in a criminal case the right to the assistance of counsel. Article I, section 11, of the Oregon Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right to * * * be heard by himself and counsel." Similarly, the Sixth Amendment to the Constitution of the United States provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." To implement those rights, judicial decisions and statutes provide a defendant with the right to appointed counsel if the defendant cannot afford to pay for a lawyer. Moreover, the defendant's right is not just to a lawyer in name only, but to a lawyer who provides adequate assistance. As this court has explained:

> "The mere act of appointment of counsel to represent an indigent accused is obviously not sufficient to provide the protection afforded by these constitutional provisions. Rather, the provisions call for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf."

*Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981); *see also Langley*, 314 Or at 258 ("The right to counsel requires adequate performance of an appointed lawyer's professional assistance."). The Sixth Amendment right similarly requires not just counsel, but effective counsel. *See Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (" 'the right to counsel is the right to effective assistance of counsel' ") (quoting *McMann v. Richardson*, 397 US 759, 771 n 14, 90 S Ct 1441, 25 L Ed 2d 763 (1970)). In *Strickland*, the Court emphasized the underlying purpose of requiring effective (or, to use the more accurate word adopted by this court, "adequate") counsel:

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

*Id.*

The quotations from *Krummacher* and *Strickland* make it apparent that the constitutional right is a right to adequate counsel. If that right is violated, then the defendant will receive a new trial or other appropriate relief. *See, e.g., Rompilla v. Beard,* 545 US ____ , 125 S Ct 2456, 162 L Ed 2d 360 (2005) (in capital case, defense counsel's failure to examine files of defendant's previous convictions violated defendant's right to effective counsel in penalty phase; federal habeas corpus relief granted and death sentence set aside); *Stevens v. State of Oregon,* 322 Or 101, 902 P2d 1137 (1995) (defense counsel's failure to interview critical witnesses violated defendant's right to adequate counsel; post-conviction relief granted). However, nothing in the text of the federal or state constitutional provisions, or in any controlling case law that we have found, suggests that a trial court constitutionally is required always to make an inquiry or factual assessment *during trial* into a defendant's complaint that his counsel is failing to provide adequate assistance.[4]

In Oregon, the legislature has established a post-conviction hearing procedure in which any person convicted of a crime may challenge his or her conviction on the ground that it resulted from a substantial denial of a state or federal constitutional right. ORS 138.510 to 138.686; *see generally* Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337 (1960) (describing origins of

___

[4] Some circumstances, however, may be so egregious as to require the court's immediate attention. That might be the case where, for example, counsel's conduct at trial in the presence of the judge, the full details of which are established on the trial record, raises serious doubts about whether counsel is adequate. Such rare circumstances, however, are not present here, and we do not address them. *Cf. Burdine v. Johnson,* 262 F3d 336 (5th Cir 2001), *cert den,* 535 US 1120 (2002) (granting habeas corpus relief when defense counsel repeatedly fell asleep during guilt phase of capital murder trial). Similarly, where the trial court knows or reasonably should know from the record before it that appointed counsel may have a conflict of interest, the trial court is obligated to inquire about that potential conflict. *See Wood v. Georgia,* 450 US 261, 271-74, 101 S Ct 1097, 67 L Ed 2d 220 (1981) (so holding). There is no allegation here of any conflict of interest, and we do not address that issue.

and explaining statute). Under the post-conviction statute, a defendant may attack his or her conviction collaterally on the ground that he or she received inadequate assistance of counsel at trial. *See Stevens*, 322 Or at 107-08 (stating principle); *see also* ORS 138.530(1)(a) (post-conviction relief "shall be granted" if petitioner establishes "substantial denial" of petitioner's constitutional rights). In such a proceeding, a petitioner challenging the adequacy of trial counsel is represented by new counsel, is able to introduce evidence that trial counsel's representation failed to meet the required standard of professional competence, and has the opportunity to demonstrate that trial counsel's performance prejudiced the petitioner. *See, e.g., Stevens*, 322 Or at 104-10 (describing elements of claim for post-conviction relief and evidence in post-conviction proceeding). And, when a post-conviction petitioner meets the standards for post-conviction relief, the court may order a new trial or other appropriate relief. ORS 138.520 (post-conviction court may order release, new trial, modification of sentence, or other relief). In *Stevens*, for example, this court held that the petitioner's counsel had been constitutionally inadequate in failing to interview critical witnesses, and the court granted post-conviction relief. *Stevens*, 322 Or at 110; *see also Lichau v. Baldwin*, 333 Or 350, 39 P3d 851 (2002) (finding inadequate assistance of counsel and granting post-conviction relief where counsel failed to investigate sufficiently a plausible alibi defense).

As discussed above, a defendant has a constitutional right to the adequate assistance of counsel, and when a defendant is prejudiced by a violation of that right, the defendant is entitled to relief. The post-conviction procedure provides a constitutionally sufficient mechanism for a person convicted of a crime to raise any claim of inadequate counsel and to obtain appropriate relief.[5]

---

[5] Because of the availability of statutory post-conviction relief, this case stands in contrast to *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 796 P2d 1193 (1990), where a parent in a parental rights termination proceeding challenged the adequacy of her appointed counsel on appeal. This court held that, because the legislature had established no specific procedure for a parent to challenge the adequacy of appointed counsel, the court could fashion such a procedure. The court concluded that those challenges should be raised and decided on direct appeal, rather than in a separate post-judgment proceeding. *Id.* at 185-87.

## C. *Permissible Trial Court Procedures*

The availability of post-conviction relief does not mean that a trial court, when confronted with a request for substitute counsel, should *not* inquire or make a factual assessment of the legitimacy of the defendant's complaints during trial. There are obvious advantages to resolving such claims as early as possible in a criminal proceeding. If a defendant's complaint about counsel is well taken, the speedy appointment of substitute counsel can eliminate an issue that might result in reversal on appeal or the setting aside of a conviction in a post-conviction proceeding. Resolving inadequate assistance claims during trial promotes finality in court decisions and avoids duplicative proceedings. *See generally* William W. Schwarzer, *Dealing with Incompetent Counsel—The Trial Judge's Role*, 93 Harv L Rev 633 (1980) (describing limitations of appellate review and collateral proceedings as means of assessing adequacy of counsel and discussing benefits of active trial court involvement to ensure adequate counsel).[6]

Yet, in many cases, the disadvantages of a factual inquiry into a defendant's complaints about counsel during trial will be substantial. In the present case, for example, defendant asserted that trial counsel had failed to interview potential witnesses who, he contended, would support his version of the facts of the case. A full inquiry into that claim might well have required the trial court to elicit information from defense counsel as to which witnesses defense counsel had contacted and why, and which witnesses counsel had intended to call and why or why not. Those inquiries obviously raise serious issues about the disclosure of privileged communications, lawyer work product, and trial strategy. Lurking just beneath the surface are additional questions of whether the trial court should or could hold such a hearing *in*

---

[6] Judge Schwarzer argues that a trial court confronted with a complaint about the adequacy of counsel should "conduct an inquiry and make findings on whether bona fide grounds exist for a change of counsel." 93 Harv L Rev at 652. We agree that such an inquiry may be appropriate in some circumstances. However, for the reasons discussed in this opinion, we conclude that the constitutional right to adequate counsel does not impose such an affirmative obligation on the trial court. Rather, the appellate court should focus on whether the trial court abused its discretion in ruling on the motion to substitute counsel based on the record the court had before it.

*camera* to avoid disclosure of confidential information to the prosecution; whether an *in camera* hearing would be consistent with the open courts provision of Article I, section 10, of the Oregon Constitution; whether, if the case is being tried to the court, a different judge should conduct the inquiry; and whether, to avoid any conflict of interest, the trial court should appoint new counsel to represent the defendant in a hearing at which the defendant challenges the adequacy of existing counsel.

Other problems arise if the defendant's complaints about appointed counsel are made not on the day of trial, as in this case, but in the middle of trial or after the jury has been instructed, but before it renders a verdict. The potential disruption and delay of conducting a factual inquiry in the middle of a trial into a defendant's complaints about appointed counsel should be apparent. In some cases, the trial court may conclude that the cost and length of trial and the nature of the defendant's objections would result in little disruption to the trial or that any disruption would be justified, but in other cases the disruption would be significant and unjustified.

A post-conviction proceeding substantially avoids the pitfalls of a detailed inquiry and factual assessment by the trial court during trial. As we have described above, such post-conviction trial procedures ordinarily will be superior to a truncated factual inquiry during a criminal trial as a way to determine whether defense counsel was inadequate. State and federal habeas corpus proceedings, when available, similarly provide procedures for a petitioner to make a full record in support of claims of inadequate assistance of counsel.

The foregoing discussion demonstrates how narrow our holding is in this case. We hold simply that defendant's complaints here did not *require* the trial court independently to "inquire" and to make a "factual assessment" based on that inquiry regarding the adequacy of appointed counsel. As we discuss below, a trial court should exercise its discretion in ruling on a motion for appointment of new counsel, engaging in such inquiry as the nature of defendant's complaints requires.

## D.  *Defendant's Remaining Assignment of Error*

■     We now turn to defendant's second assignment of error: that the trial court erred in denying his motion for appointment of new counsel. We review that ruling to determine whether the trial court abused its discretion. *Langley,* 314 Or at 258.

As the colloquy quoted earlier demonstrates, the trial court listened as defense counsel summarized defendant's complaints about the adequacy of trial counsel's representation. The court then permitted defendant to describe those complaints himself on the record. Defendant's complaints consisted of the generalized concern that he would not receive "fair representation" from his counsel and the specific objection that his counsel had failed to investigate sufficiently, including contacting only one of the potential witnesses identified by defendant. Defendant made no record as to the identity of those witnesses, their possible testimony, or their connection to his defense.

The trial court responded to defendant's general complaint by stating that he believed defense counsel was a "very good" lawyer and that if he were charged with a crime, he would put defense counsel on a short list of lawyers that he would consider to represent him. As to the specific complaint, regarding investigation and preparation for trial, the trial court credited defense counsel's statement that he was prepared for trial, which defense counsel apparently had made to the trial court in chambers: "[I]f [defense counsel] tells me that he's ready to go to trial in this matter and represent your interests, I have to believe him."[7] Defense counsel later confirmed to the trial court that he was prepared for trial. The trial court thus heard and considered defendant's concerns and concluded that defendant had not demonstrated a legitimate reason for the court to appoint substitute counsel. For those reasons, the trial court did not abuse its discretion in denying defendant's motion.

---

[7] In the context of the trial court's other comments, we take this statement to mean that the trial court *did* believe defense counsel's assertion that he was prepared for trial and not to mean that the court felt that it was *required* to believe defense counsel or lacked the discretion to disbelieve him.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.